**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CLARENCE BOONE,** | **§** | |
| **Plaintiff,** | **§** | |
| **v.** | **§** | **No. 3:11-CV-813-BF** |
| | **§** | |
| **COMMISSIONER OF THE** | **§** | |
| **SOCIAL SECURITY ADMINISTRATION,** | **§** | |
| **Defendant.** | **§** | |

**MEMORANDUM OPINION AND ORDER**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying the claim of Clarence Boone ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, Defendant's Brief, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. The final decision of the Commissioner is reversed and remanded for further proceedings.

## Background[1]

### Procedural History

Plaintiff concurrently filed for DIB and SSI under the Act on March 21, 2006. (Tr. 47.) Plaintiff asserts March 1, 2006, is the date he became disabled. (*Id.*) Plaintiff's applications were initially denied on August 3, 2006, and again upon reconsideration on October 4, 2006. (Tr. 71, 80.) On December 12, 2006, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (Tr.

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

86.) Plaintiff testified at a hearing held by ALJ Arthur Schultz on September 5, 2007, in Dallas, Texas. (Tr. 55.)

On September 28, 2007, the ALJ issued an unfavorable decision. (Tr. 52.) In his decision, the ALJ followed the five-step sequential disability analysis required by 20 C.F.R. § 404.1520(a). (Tr. 56-57.) The ALJ concluded that although Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 61.) Thus, the ALJ determined that Plaintiff is not disabled as defined by the Act. (*Id.*) Upon request for review, the Appeals Council vacated the unfavorable decision and remanded the case to the ALJ for further proceedings. (Tr. 64.)

On remand, the Appeals Council ordered the ALJ to obtain updated medical records from Plaintiff's treating sources, including re-contacting his medical sources and receiving a detailed clarification from Dr. Morris-Harris. (Tr. 67.) The ALJ was also told to further evaluate Plaintiff's mental impairments, his subjective complaints, and his maximum residual functional capacity ("RFC") while specifically referencing the evidence supporting such limitations. (*Id.*) Last, the ALJ was to apply the sequential analysis in consideration of the combination of Plaintiff's impairments along with his alcohol and drug use. (Tr. 68.) Following remand orders, another hearing was held before ALJ Arthur Schultz on April 8, 2009, in Dallas, Texas. (Tr. 25-46.) Again, Plaintiff appeared and testified, as did a state agency medical expert ("ME") and a vocational expert ("VE"). (Tr. 3, 17.)

On October 23, 2009, the ALJ issued another unfavorable decision. (Tr. 11.) The ALJ concluded that Plaintiff has not been under a disability, as defined by the Act from March 1, 2006, through the date of the decision. (*Id.*) Subsequently, Plaintiff requested a review of the hearing

decision on October 23, 2009. (Tr. 1.) Without specifically discussing the merits of the brief or the new evidence, the Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 25, 2011. (*Id.*) Having exhausted his administrative remedies, Plaintiff then filed this civil action against the Commissioner under the authority in 42 U.S.C. § 405.

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was 46 years old at the time of his alleged onset date. (Tr. 20.) He has a high school education and two years of college courses. (Tr. 20, 255.) His past relevant work was as a telephone technician and as a telephone operator. (*Id*.)

**Plaintiff's Medical Evidence**

Plaintiff has multiple impairments including HIV, DDD, depression, asthma, chronic bronchitis, hypertension, weight loss, and bipolar disorder. In March 2006, Plaintiff was confirmed positive for HIV at Parkland Hospital in Dallas ("Parkland"), and Mayo Medical Laboratories also reports a positive Western blot assay. (Tr. 390, 529.) Further, Plaintiff's cholesterol was low and he tested positive for Hepatitis B. (Tr. 537, 544.)

On March 23, 2006, Plaintiff went to Parkland. (Tr. 371.) He was diagnosed with AIDS, a chronic cough, alcoholism, athlete's foot, smoking, and depression. (*Id.*) The next day, a chest x-ray showed a mildly prominent right hilum and some mild increase interstitial markings in the perihilar regions. Parkland referred Plaintiff for counseling for his depression and history of alcoholism. (Tr. 429.) Plaintiff's hemoglobin and hematocrit were both low. (Tr. 532.) Another chest x-ray on April 6, 2006, revealed pneumonia secondary to AIDS. (Tr. 364.) He also had weight loss. (Tr. 365.)

A week later, Plaintiff was referred to Parkland's psychiatry and psychology unit based on his depression. (Tr. 416.) Plaintiff's symptoms included depressed/irritable mood, diminished interest, sleep disturbance, feelings of guilt and worthlessness, loss of energy, impaired concentration and memory, appetite and weight changes, and thoughts of suicide. (*Id.*) He also had anxiety which included panic symptoms. (*Id.*) A month before, Plaintiff had been close to committing suicide. (*Id.*, 417.) Further, Plaintiff had sweats, shortness of breath, and heart palpitations. (*Id.*) Plaintiff was living at Cornell Drug and ETOH rehabilitation facility, and a mental status examination revealed a depressed mood and social isolation. (*Id.*, 417-18.) The overall diagnostic impression at Axis I was (1) manic depressive disorder, (2) panic disorder without agoraphobia, and (3) alcoholism in full remission. (*Id.*, 419.) At Axis III, Plaintiff was diagnosed with HIV and a hernia, and at Axis IV, he experienced financial problems and social isolation. (*Id.*) At Axis V, Plaintiff was given a Global Assessment of Functioning ("GAF") score of 45, indicating serious symptoms and functional limitations. (*Id.*)

On April 18, 2006, a Dallas Metrocare mental health note listed Plaintiff's chief complaints as depression, anxiety, and panic attacks. (Tr. 468-69.) Plaintiff discusses his HIV and subsequent AIDS diagnosis. (*Id.*) Plaintiff was molested at age 12 and began using alcohol at age 14. (Id.) He was laid off from his job on April 1, 2005. (Tr. 469.) Plaintiff's symptoms of depression included insomnia, decreased appetite, anhedonia, excessive guilt, a pervasive sense of sadness, crying spells, and feelings of helplessness. (*Id.*) Plaintiff's mood went from anxious to angry to depressed to crying, and he reported that he had panic attacks four nights a week. (*Id.*) His GAF score dropped to 40. (*Id.*) Three days later, a psychologist's note diagnosed Plaintiff with: major depressive disorder, recurrent, severe without psychosis; panic

disorder without agoraphobia; and alcoholism, full remission. (Tr. 412.) Plaintiff remained depressed. (*Id.*)

Plaintiff went to Parkland on April 24, 2006, because he was having abdominal pain and pain when he swallowed. (Tr. 357.) The abdominal pain was at 9 on a 10-point scale. (Tr. 358.) Plaintiff also had constant pain when swallowing and eating, had night sweats and fever, and had shortness of breath. He became nauseated and was vomiting. (*Id.*) The impression was abdominal pain, esophagitis-herpetic, and AIDS. (Tr. 378.) The same day, Plaintiff underwent a psychiatric assessment. (Tr. 471.) He was described as "tall and underweight." (Tr. 472.) Since being diagnosed with AIDS, Plaintiff had experienced depression, anxiety, sleep disturbance, and decreased appetite. (*Id.*) Although Plaintiff was taking Celexa, he was still depressed. (*Id.*)

On May 15, 2006, a Parkland psychologist diagnosed Plaintiff with depression and alcoholism in full remission. (Tr. 408.) Another mental health note was completed on June 7, 2006. when Plaintiff's mood was better, and when he denied recent problems with impulse control. (Tr. 476.) However, still had a major depressive disorder and his GAF was assessed at 48. (*Id.*) Plaintiff's past medical history included headaches, vision problems, glaucoma, hearing loss, joint problems, depression, and anxiety. (Tr. 349.)

On July 14, 2006, Plaintiff was again diagnosed with major depressive disorder coinciding with AIDS. (Tr. 465.) He also had panic attacks and anxiety about death and dying. (*Id.*) Two weeks later, the consulting psychiatrist Dr. Mount completed a clinical interview and mental status examination. (Tr. 432.) Plaintiff had suicidal thoughts and had lost 15 pounds. (Tr. 433.) He was experiencing guilt, worthless, and a feeling of being punished. (*Id.*)

Additionally, he had trouble concentrating, trouble making decisions, did not visit friends, and tended to isolate himself. (*Id.*) Plaintiff had a depressed affect and mood, and his recent memory was not intact. (*Id.*) Dr. Mount's prognosis for Plaintiff was guarded. (*Id.*) Plaintiff was diagnosed with mood disorder due to AIDS, with major depressive-like episodes, as well as alcohol abuse in remission. (Tr. 434.) He was also diagnosed with psychological stressors and occupational problems, and his GAF was assessed at 45. (*Id.*)

On January 3, 2007, another report showed Plaintiff had a GAF of 40. (Tr. 958, 645.) Two weeks later, Plaintiff went to Parkland because of left shoulder pain. (Tr. 698-99.) His physical examination revealed a 50% reduction in his range of motion, as well as pain.

Dr. Ugwuh at Dallas Metrocare completed an outpatient assessment of Plaintiff on April 4, 2007. (Tr. 637.) The overall diagnosis was major depressive disorder and alcohol dependence. (*Id.*) Plaintiff's GAF was assessed at 40. (*Id.*) A subsequent progress note listed Plaintiff's history of present illnesses as AIDS, alcoholism post-rehab, depression, chronic bronchitis, and anorexia secondary to depression. (Tr. 494.) Plaintiff also had "upper body wasting." (Tr. 495.)

In June, Plaintiff reported chills, chest and leg pain, COPD, AIDS, depression, and said that he was vomiting blood. (Tr. 694.) The diagnosis was AIDS, depression, ETOH, insomnia, weight loss, and parotid swelling. (Tr. 695.) A week later, Plaintiff reported he had not had any alcohol since November 2004, and the doctor renewed his prescription for Celexa and Wellbutrin. (*Id.*)

On September 4, 2007, Plaintiff was "real depressed" and was not coping well because his father had died. (Tr. 1004.) A month later, Plaintiff begins attending mental health case

management sessions at Metrocare. (Tr. 1006.) The doctor concluded that although Plaintiff's HIV was then controlled, his other serious psychological and health problems such as recurrent gastritis, COPD, recurrent bronchitis, and lower gastrointestinal bleeding precluded him from working. (Tr. 669.) Further, Plaintiff's abdominal pain was at an 8 on a 10-point scale, he was still losing weight, and he was tired, weak, and depressed. (Tr. 692.) Plaintiff was diagnosed with HIV, COPD, chest pain, rectal bleeding, major depression, and hyperlipidemia. (Tr. 693.)

A case management report on December 11, 2007, stated Plaintiff was compliant with his medications, sobriety, and probation. (Tr. 1015.) Although Plaintiff's QIDS score has decreased from 20 to 16,[2] he remained severely depressed. (*Id.*) Plaintiff's depression symptoms were not improving with Celexa and Wellbutrin; thus, his doctor additionally prescribed lithium carbonate. (Tr. 1018.) At another training session, Plaintiff reported he was depressed and had family problems, as well as mood swings. (Tr. 1020.)

On May 2, 2008, Plaintiff went to Parkland because of low back pain. (Tr. 678.) His pain was an 8 on a 10-point scale, and he was also wheezing and coughing. (Tr. 679.) Two months later, Dr. Morris-Harris diagnosed Plaintiff with HIV/AIDS, asthma, and low back pain. (Tr. 676-77.)

On November 10, 2008, an MRI of the lumbar spine revealed a broad-based disc bulge at L3-L4 with narrowing of the bilateral neural foramina. (Tr. 1038.) The diagnosis was degeneration of the lumbar or lumbosacral intervertebral disc, lumbosacral spondylosis without myelopathy, and lumbago. (Tr. 1038-39.) Later, Plaintiff returned to Parkland for his back pain.

[2]QIDS is the Quick Inventory of Depressive Symptomology. A score between 16-20 is deemed severe depression.

(Tr. 780.) He was diagnosed with HIV/AIDS, hyperlipidemia, low back pain, and COPD. (Tr. 781.) Plaintiff also went to the Physical Medicine and Rehabilitation Spine Injection Clinic ( the "Spine Clinic") for back pain in December 2008. (Tr. 1051.)

Plaintiff's back pain persisted, and in January 2009, he visited the Department of Ambulatory Services at Parkland. (Tr. 1044.) His back pain had progressively worsened over the past year-and-a -half and was then at 8 on a 10-point scale. (*Id.*) Physical examination revealed that he was thin with decreased extension and increased pain with flexion of the lumbar spine, as well as decreased flexion of the hip. (*Id.*) Plaintiff also had a positive straight leg raising test with bilateral leg pain at 30 degrees. (Tr. 1045.) Plaintiff was diagnosed with lumbar disc herniation, radiculitis, and lumbar degenerative disc disease. (*Id.*) He returned to the Spine Clinic for back pain and was referred to physical therapy. (Tr. 1046-48.)

On February 3, 2009, Plaintiff returned to Parkland for continuing back pain and an increase in his blood pressure. (Tr. 981.) The diagnoses were HIV/AIDS, COPD, hypertension, neuropathy, low back pain, and bipolar disorder. (Tr. 982.) Plaintiff was again diagnosed with bipolar disorder in March. (Tr. 975.) He was having mood swings and racing thoughts. (*Id.*) He was told to continue Wellbutrin, Remeron, and lithium carbonate. (*Id.*) Dr. Morris-Harris, a Harvard Medical School graduate, stated that, in her medical opinion, Plaintiff was totally disabled. (Tr. 978.) She added that drug or alcohol use was not a material cause of his disability. (*Id.*)

A month later, Dr. Morris-Harris completed an AIDS/HIV impairment questionnaire. (Tr. 1057.) She had begun seeing Plaintiff in May 2006 and had continued to see him every six weeks since that time. (*Id.*) Although Plaintiff had improved, he still had severe back pain and

HIV, which had caused complications. (*Id.*) The neurological complications included neuropathy and headaches, and the pulmonary complications included COPD. (*Id.*) Other complications included occasional diarrhea, an abnormal liver function test, depression, and bipolar disorder. (*Id.*)

According to Dr. Morris-Harris, in an eight-hour workday, Plaintiff could only sit, stand, and walk for one hour each. (Tr. 1061.) Additionally, he could not do any lifting or carrying. (*Id.*) Plaintiff constantly experienced pain, fatigue, or other symptoms that interfered with his concentration and attention. (Tr. 1062.) His problems were expected to last 12 months, and he was not a malingerer. (*Id.*) The psychological conditions that affected Plaintiff's physical conditions included depression and chronic back pain. (*Id.*) He was only capable of tolerating "low work stress," his impairment was likely to produce good days and bad days, and it was estimated that he would miss at least three days of work a month. (*Id.*) Other factors likely to limit Plaintiff's ability to work on a regular, sustained basis included the inability to push, pull, kneel, bend, and stoop. (Tr. 1063.) In an attempt to lessen Plaintiff's symptoms and relieve his side effects, Dr. Morris-Harris had changed his medications and sent him to physical therapy through the Spinal Clinic. (Tr. 1061.) Dr. Morris-Harris also diagnosed Plaintiff with moderate malnutrition. (Tr. 1065.)

On June 10, 2009, Dr. Morris-Harris completed interrogatories provided by ALJ Schultz in accordance with the Appeals Council's remand order. (Tr. 1084.) Dr. Morris-Harris conducted functional testing and physical examinations in conjunction with her previously submitted evidence. (*Id.*) Further, she relied on both subjective and objective limitations and symptoms in providing the information. (Tr. 1085.) Plaintiff's abilities to sit, stand, and walk

were limited due to low back pain, as evidenced by an MRI as well as a positive straight leg raising exam. (*Id.*) The back pain was likely caused by disc bulge and neural foramina. (Tr. 1085-86.) It might also have been due to his disc herniation, which can impinge on nerve fibers and cause pain. (*Id.*) Plaintiff's alcohol and drug use were not material. (Tr. 1086.) Plaintiff's condition remained unimproved despite his physical therapy and treatment at the Spine Clinic. (Tr. 1087.)

On December 7, 2009, Plaintiff's medication list from Parkland included 17 different medications. (Tr. 328.) These medications were prescribed for a variety of problems including blood pressure, appetite, depression, pain, sleep, HIV, nerves, COPD, and GERD. (*Id.*) MHMR listed three additional medications Plaintiff was taking for his depression. (*Id.*) Further, the Spine Clinic prescribed Tizanidine for back pain and spasms, and Dr. Noss prescribed Seroquel XR for Plaintiff's bipolar disorder. (*Id.*)

Dr. Mount examined Plaintiff again in December 2009, and performed multiple psychological tests on Plaintiff. (Tr. 330.) Based on the test data, Dr. Mount assessed Plaintiff's ability to do work-related activities, rating Plaintiff as "poor" in eleven different areas. (Tr. 339-40.) With respect to personal-social adjustments, Plaintiff had a "poor" ability to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability. (*Id.*) Dr. Mount concluded that drugs and alcohol use were not contributing factors to Plaintiff's impairments, and he would continue to have the impairments even if he was not using drugs and/or alcohol. (Tr. 342.)

On April 27, 2010, Dr. Morris-Harris stated Plaintiff's HIV was diagnosed at Parkland and was confirmed by laboratory testing. (Tr. 1089.) Plaintiff's neurological abnormalities

included HIV encephalopathy, and HIV wasting syndrome. (Tr. 1090.) Further, Plaintiff was "markedly" restricted in activities of daily living, and had "marked" difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace (to be confirmed by a neuro-cognitive test scheduled with Dr. Noss). (Tr. 1091.) Two months later, Dr. Morris-Harris further asserted that Plaintiff's HIV was manifested through syncopal episodes, which he had experienced four times in one month. (Tr. 1093.) Further, he had "marked" restrictions on activities of daily living; "marked" difficulties in maintaining social functioning; and "marked" difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. (*Id.*)

**The ALJ's Decision**

The ALJ analyzed the case pursuant to the familiar five-step sequential evaluation process.[3] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 14.) At step two, he found that Plaintiff's HIV, depression, and DDD were severe impairments. (Tr. 16.) At step three, the ALJ determined that Plaintiff had no impairment, or combination of impairments, that met or equaled the requirements of any impairment listed in the regulations for presumptive disability. (*Id.*) *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ determined that Plaintiff retained the RFC for sedentary work, but restricted him to lifting or carrying 10 pounds occasionally; sitting six hours out of an eight-hour workday;

[3](1) Is the claimant working? (2) Does he have a severe impairment? (3) Does the impairment meet or equal an impairment listing in Appendix 1? (4) Does the impairment prevent the claimant from performing his past relevant work? (5) Does the impairment prevent the claimant from doing any other work? 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

standing or walking for six hours out of an eight-hour workday; stooping, kneeling, crouching, and crawling occasionally; and no climbing of ladders/ropes or exposure to hazards. (Tr. 17.) In addition, the ALJ found that Plaintiff had the ability to understand, remember, and follow simple and detailed instructions and complete repetitive tasks, with no exposure to the public. (Tr. 17.)

At step four, the ALJ determined that Plaintiff was not able to return to his past relevant work. (Tr. 20.) At step five, with the assistance of VE testimony, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy. (Tr. 21.) As examples of such work, the VE cited the jobs of final assembler, with 56,000 positions in the national economy; document preparer, with 60,000 positions in the national economy; and PC board assembler, with 46,000 positions in the national economy. (*Id.*) Therefore, the ALJ found that Plaintiff was not disabled at any time through the date of the decision. (*Id.*)

Plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 8.) On February 25, 2011, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final administrative decision for purposes of judicial review. (Tr. 1-4.)

**Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[4] In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen*, 833 F.2d 529, 531 (5th Cir.1987).

**Issues**

1. Whether the ALJ committed legal error by failing to use the required severity standard set out in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

2. Whether the ALJ's RFC assessment is supported by substantial evidence in the record.

---

[4] Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2)

**Analysis**

**Legal Error at Step 2**

Plaintiff contends that the ALJ committed legal error at Step 2, requiring reversal and remand. In his first decision on September 28, 2007, the ALJ found that Plaintiff had severe impairments of HIV, COPD, and depression. (Tr. 58, Finding 3.) Plaintiff appealed, and on review, the Appeals Council vacated the ALJ's decision and remanded the case. (Tr. 78.) The Appeals Council found that the record was unclear regarding the nature and severity of the claimant's impairments. (*Id*., 66.) The Appeals Council noted that Plaintiff has a long history of alcoholism and depression, recurrent gastritis and lower gastrointestinal bleeding, is a smoker with hypertension, displays shortness of breath and right ventricular hypertrophy, has a diagnosis of Major Depressive Disorder, and is on four prescription medications in addition to cognitive behavioral therapy. (*Id*.) The Appeals Council noted that Plaintiff's treating physician, Dr. Morris-Harris, considered the claimant disabled, with a guarded prognosis. (*Id*.) The Appeals Council concluded that "further information and evaluation of the combination of the claimant's impairments was needed." (*Id*.) Plaintiff contends that the ALJ committed legal error at Step 2 by failing to use the required severity standard set out in *Stone* at 1104-05. The ALJ found that Plaintiff's only severe impairments were HIV, depression, and DDD. Plaintiff contends that the ALJ's failure to use the correct severity standard is further evidenced by other impairments, lasting longer than 12 months, which affect Plaintiff's ability to work, and which the ALJ failed to find severe. Such impairments include hepatitis, weight loss, COPD, recurrent bronchitis, anxiety, and bipolar disorder. The ALJ's second decision denying benefits fails to clarify the nature and severity of all of Plaintiff's impairments, as ordered by the Appeals Council.

Although the Commissioner argues that the ALJ complied with the Fifth Circuit's requirements at Step 2 of the sequential evaluation by specifically using the technique set forth in 20 C.F.R. § 404.1520a for evaluation of mental impairments, the use of the technique is not an indication that the *Stone* standard was applied. Even if the mental impairments are presumed non-severe under the application of the technique, the *Stone* standard must still be applied. *See Arebalo ex rel. Arebalo v. Astrue,* 4:09-CV-496-A, 2010 WL 6571087 at *7 (N.D. Tex. Oct. 7, 2010) report and recommendation accepted, 4:09-CV-496-A, 2011 WL 1633137 (N.D. Tex. Apr. 29, 2011).

Pursuant to Social Security regulations, a severe impairment is "any impairment or combination of impairments which significantly limits (a claimant's) physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). This is the standard that the ALJ applied in this case, and it is very different from the *Stone* standard. (Tr. 15.) The Fifth Circuit held in *Stone* that an impairment is not severe "only if it is a slight abnormality (having) such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, at 1104-05. The Fifth Circuit further ruled that unless the ALJ specifically uses the correct severity standard by referring to the *Stone* opinion or another opinion of the same effect, or by an express statement that the construction the Fifth Circuit gives to 20 C.F.R. § 404.1520(c) (1984) is used, then the court must assume the ALJ and Appeals Council applied an incorrect standard to the severity requirement and reverse the decision denying benefits and remand the case to the Commissioner. *Id.* at 1106.

In this case, the ALJ did not show that he actually applied either *Stone* or the construction the Fifth Circuit gives to 20 C.R.F. § 1520(c), in evaluating Plaintiff's physical impairments. (Tr.

16.) The ALJ must apply the correct standard of severity; otherwise, the case must be remanded. *Stone* at 1106; *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir.1986).

On February 3, 2009, a doctor at Parkland diagnosed Plaintiff with Bipolar Disorder. (Tr. 982.) Plaintiff was again diagnosed with Bipolar Disorder in March of 2009. (Tr. 975.) Plaintiff was having mood swings and racing thoughts. (*Id.*) He was instructed to continue Wellbutrin, Remeron, and Lithium Carbonate. (*Id.*) Plaintiff was also having severe anxiety with panic attacks. On December 9, 2009, a consultative psychologist, Dr. Mount administered the MCM13 and reported scores on the Beck Anxiety Inventory of 48, which places Plaintiff in the severe anxiety range of 26-63. (Tr. 326) Dr. Mount stated that Plaintiff's prognosis was guarded and assessed his GAF at 45. (*Id.*) Parkland doctors reported a history of panic attacks and later noted that Plaintiff's anxiety as including panic attacks occurring 2-3 times a week. (Tr. 349, 416.) Dallas Metrocare reported Plaintiff suffered from anxiety about death and dying and with panic attacks 4 nights a week. (Tr. 469-70.)

On December 7, 2009, Plaintiff's medication list from Parkland included 17 different medications, including Seroquel XR, which Dr. Noss prescribed for Plaintiff's Bipolar Disorder. (Tr. 328.) The ALJ failed to mention Plaintiff's Anxiety or Panic Disorder and Bipolar Disorder in determining the severity of Plaintiff's mental impairments.

The same is true with respect to Plaintiff's physical medically determinable impairments. The medical evidence shows that, in addition to HIV, depression, and DDD, Plaintiff tested positive for Hepatitis in March 2006 (Tr. 535), and continued to test positive on two subsequent tests in March 2008 (Tr. 903) and February 2009 (Tr. 991). Further, in April 2006, Plaintiff began experiencing a decreased appetite and weight change. (Tr. 365.) He continued to lose weight

throughout 2006 (Tr. 416, 469, 412, 472) and was still being diagnosed with weight loss in June 2007. (Tr. 695.) Plaintiff was first diagnosed with bronchitis in June 2006, and continued to be diagnosed with recurrent bronchitis up until December 2007, more than 12 months later. (Tr. 354, 571, 698, 495, 669, 671.) Additionally, Plaintiff was diagnosed with COPD in April 2007. (Tr. 495.) Plaintiff continued to be diagnosed with COPD multiple times, continued to be treated with Advair/Albuterol, and most recently was diagnosed with COPD and treated for it in February 2009. (Tr. 669, 692, 671, 781, 982.) The Court notes that the ALJ, in his first decision, found Plaintiff's COPD to be severe. However, despite the lack of medical evidence showing improvement in Plaintiff's COPD and without any explanation, the ALJ failed to find Plaintiff's COPD severe in his most recent decision. The Commissioner contends that these impairments have no supporting objective medical evidence and are based entirely on a recitation of a "history" of subjective complaints. However, the record shows positive tests for Hepatitis, documentation of Plaintiff's weight losses, and continuing diagnoses (not just histories) of chronic bronchitis and COPD, with medications prescribed. These medications were necessary for a variety of problems including blood pressure, appetite, pain, insomnia, neuropathy or nerve pain, COPD, and GERD. (Tr. 328) The ALJ failed to mention any of these physical impairments during his Step 2 determination.

The ALJ failed to consider whether Plaintiff's numerous impairments that were expected to continue longer than 12 months were severe and failed to document how he applied the Fifth Circuit standard to them. Further, the ALJ failed to follow the Appeals Council's order to consider the combined effect of all of Plaintiff's disorders. The ALJ's requirement application of the regulation requiring a "significant" limitation on the ability to work for an impairment to be severe is far different from the *Stone* standard which states that any effect on the ability to work equates to a

severe impairment, so long as the impairment is medically determinable and lasts or is expected to last 12 months. The ALJ's failure to use the required legal standard or provide any evidence the standard required by the Fifth Circuit was used at Step 2 amounts to legal error. This case is reversed and remanded based upon the ALJ's legal error at Step 2.

Because remand is required beginning at Step 2, the Court will not consider the remaining allegations of error which occurred between Step 3 and Step 4 during the ALJ's determination of Plaintiff's RFC. However, *because this is the second remand at Step 2*, the Commissioner should reassign this case to a different ALJ who should begin at Step 2, considering all of Plaintiff's impairments and determining their severity under the *Stone* standard or its equivalent. Further, during the sequential process, the ALJ should consider all of the evidence, including the evidence that was submitted to the Appeals Council. The Court declines to set a time limit as Plaintiff requests, but instead, urges the Commissioner to proceed without delay.

SO ORDERED, September 26, 2012.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE